# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**Miami Division**

### CASE NO: _____

MIGUEL ALFONSO SARMIENTO LOPEZ as
Personal Representative of the Estate of
MIGUEL ANGEL SARMIENTO BENEGAS

      Plaintiff,

vs.

CMI LEISURE MANAGEMENT, INC. and
CRUISE MANAGEMENT INTERNATIONAL, INC.
      Defendants.

_____/

## COMPLAINT

COMES NOW the Plaintiff MIGUEL ALFONSO SARMIENTO LOPEZ as Personal Representative of the Estate of MIGUEL ANGEL SARMIENTO BANEGAS and sues the Defendants CMI LEISURE MANAGEMENT, INC. and CRUISE MANAGEMENT INTERNATIONAL, INC. and alleges as follows:

## GENERAL ALLEGATIONS

### a. Subject Matter Jurisdiction

1.    This is an action for wrongful death and pre-death pain and suffering under the Jones Act, 46 U.S.C. §3104 and the Death On The High Seas Act [hereinafter "DOHSA"], 46 U.S.C. §30301 et seq and for the failure to provide prompt, adequate and proper maintenance and cure under the Jones Act and general maritime law seeking damages in excess of $75,000.00 (Seventy-five Thousand Dollars), exclusive of costs, attorneys' fees and interest.

2.    At all times material hereto, the decedent MIGUEL ANGEL SARMIENTO BANEGAS [hereinafter "SARMIENTO"] was at the time of his death a citizen of Honduras and

1

*The Peltz Law Firm, P.A. Miami, Florida  RPeltzLaw@Gmail.com  Phone 786-732-7219*

employed as a seaman, working aboard the *MV World Odyssey* as an assistant cook, which was owned by the Institute For Shipboard Education, Inc. [hereinafter "ISE"].

3.      At all times materials hereto, the Defendant CMI LEISURE MANAGEMENT, INC. [hereinafter "CMI-L."] is and was a U.S. corporation incorporated under the laws of the State of Florida and maintained its base of operations and principal place of business in Miami-Dade County and as such is a Florida citizen for the purposes of diversity of citizenship jurisdiction.

4.      At all times materials hereto, the Defendant CRUISE MANAGEMENT INTERNATIONAL, INC. [hereinafter "CMI Inc."] is and was a U.S. corporation incorporated under the laws of the State of Florida and maintained its base of operations and principal place of business in Miami-Dade County and as such is a Florida citizen for the purposes of diversity of citizenship jurisdiction.

5.      This Court has jurisdiction over the person of both CMI-L and CMI Inc. as each Defendant is a Florida corporation, which maintains its principal place of business in this state.

6.      This court has diversity of citizenship jurisdiction over the Plaintiff's claims against the Defendants CMI-L and CMI Inc. by virtue of 28 U.S.C. §1332 (a)(2) in that at all times material the decedent MIGUEL ANGEL SARMIENTO BANEGAS was a citizen of Honduras and the Defendants CMI-L and CMI Inc were both citizens of the state of Florida.

**b. Status of the Parties**

7.      A Petition for Administration was filed with the Probate Division of the Miami-Dade Court Circuit Court on February 8, 2021 by the Plaintiff MIGUEL ALFONSO SARMIENTO LOPEZ, who is the father of the decedent MIGUEL ANGEL SARMIENTO BANEGAS.   The Petition requests that the Probate Court appoint MIGUEL ALFONSO SARMIENTO LOPEZ as Personal Representative of the decedent's Estate. The Plaintiff is a

citizen of Honduras, presently residing in Georgia, and expects to be formally appointed Personal Representative of his son's estate shortly. Although the Plaintiff is actively pursuing the administration of his son's estate, the process has been slowed down by the impact of the Covid-19 pandemic. Any action taken by the Plaintiff, including the filing of this suit, will relate back to the date of the filing of the Probate Petition, once he is formally appointed Personal Representative of his son's estate.

8.      At the time of his death, the decedent SARMIENTO was the natural father of two sons, who he supported: Angel Miguel Sarmiento Tenorio, who was age 15 at the time of his father's death and Marlon Caleb Sarmiento Quintanilla, who was almost 1 year old at the of his father's death. Both of the decedent's children are residents and citizens of Honduras.

9.      At all times material hereto prior to his death, the decedent SARMIENTO was a seaman under the Jones Act and U.S. general maritime law, since he was employed as a seaman serving aboard the *MV World Odyssey*.

10.     The Defendant CMI-L. was the decedent's actual employer or alternatively his Jones Act employer by virtue of his status as a borrowed servant in that said Defendant controlled all aspects of the Plaintiff's work, including but not limited to: interviewing him, performing background checks and pre-employment physicals and making the determination to hire him; training the Plaintiff for his work tasks; assigning him to his position aboard the vessel; designing his job and determining his specific daily work duties; supervising, directing and monitoring his performance of his work tasks on a daily basis; establishing rules and regulations for the performance of his work duties; evaluating his performance of his work tasks for the purposes of maintaining his employment aboard the vessel; setting his hours of work; maintaining the right to transfer him to another vessel if it needed to do so in order to meet its business obligations;

*The Peltz Law Firm, P.A. Miami, Florida  RPeltzLaw@Gmail.com  Phone 786-732-7219*

maintaining the right to fire and/or discipline him; managing his medical needs and controlling his ability to obtain medical attention both aboard the vessel or shoreside when necessary to treat injuries or illness occurring during his service to the vessel; and handling all claims arising out of his employment.

11.     ISE, which is an educational provider, was at all times material the owner *pro hac vice* of the *M/V World Odyssey.* The vessel was the centerpiece of ISE's Semester at Sea business, which took students to various international ports as part of its educational program. Since ISE is an educational provider and not a ship operator, it needed an entity to perform all of the technical services necessary to operate its vessel, upon which its business was based.

12.     As a result, ISE entered into a contract with Defendant CMI Inc. to act as the Manager of its vessel's deck and engine departments, pursuant to which CMI Inc. performed the total management of the vessel's operational and financial services. Among the obligations undertaken by CMI Inc. were the employment of the ship's doctor for the treatment of the crew, the selection and procurement of the medicines necessary for the treatment of the crew, the maintenance of the ship's formulary of medicines and the overall operation and navigation of the vessel.

13.     As a Jones Act seaman, the decedent's estate and beneficiaries are entitled to the federal statutory remedies set forth in the Jones Act, 46 U.S.C. §3104 and the Federal Employers Liability Act, 45 U.S.C. §51 et seq incorporated therein by reference as well as the remedies guaranteed by the United States Supreme Court set forth as part of the general maritime law for seamen, including but not limited to maintenance and cure.

### d. The Underlying Incident

14.     Prior to signing on to the vessel, the decedent SARMIENTO underwent and passed

4

a thorough pre-employment medical evaluation in which he was found to be fit for duty and free from disease or illness on August 28, 2019.

15.     Subsequently while working aboard the vessel, the decedent SARMIENTO began to suffer from the symptoms of malaria or some similar disease during the month of November 2019, which was contracted, aggravated and/or first manifested itself while he was in the service of his vessel. This medical condition is successfully treatable if promptly and properly treated, but life threatening if not promptly and properly treated.

16.     Under both the Jones Act and the general maritime law, the seaman's actual and borrowed employer owed him the non-delegable duty to provide prompt, adequate and proper medical care for all illnesses, diseases, injuries and conditions contracted, aggravated or manifesting themselves during the seaman's service to his vessel.

17.     Nevertheless, the Defendant CMI-L, who was the decedent's actual employer or by virtue of his status as a borrowed servant, failed to provide him with timely, proper or adequate medical care, either onboard the vessel or shoreside when it stopped at port(s) and/or by failing to divert to ports where he could obtain appropriate medical care and as a result thereof the decedent SARMIENTO suffered a long, lingering and painful death while aboard the *M/V World Odyssey*, eventually dying on or about November 19, 2019 of toxic shock resulting from the failure to provide him with prompt, proper and adequate medical treatment.

## COUNT I

### JONES ACT CLAIM AGAINST CMI INC. FOR NEGLIGENT FAILURE TO PROVIDE PROMPT, ADEQUATE AND APPROPRIATE MEDICAL CARE

18.     The Plaintiff repeats and adopts paragraphs one (1) through seventeen (17) through above and further avers:

19.     The Jones Act, 46 U.S.C. §30104 f/k/a 46 App. U.S.C.A. §688 provides:

5

A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring <u>a civil action at law, with the right of trial by jury</u>, against the employer. <u>Laws of the United States regulating</u> recovery for personal injury to, or death of, <u>a railway employee apply to an action</u> under this section. (emphasis added)

20.     The Federal Employers Liability Act, 45 U.S.C. §51, which is incorporated by

reference into the Jones Act protections provided to seamen, provides in pertinent part:

Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

21.     The Federal Employers Liability Act, 45 U.S.C. §55, which is incorporated by

reference into the Jones Act protections provided to seamen, provides in pertinent part:

<u>Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void</u>: *Provided,* That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought. (emphasis added)

22.     At all times material hereto, the decedent was employed by the Defendant CMI-L

while serving aboard the *MV World Odyssey* as a seaman under the Jones Act and U.S. general

maritime law and accordingly, the Defendant CMI-L was his Jones Act employer.

23.     In the alternative, as set forth in detail in paragraph ten (10) above, the Defendant

CMI-L was the decedent's Jones Act and/or borrowed employer by virtue of his status as a

borrowed servant in that said Defendant controlled all aspects of the decedent's work.

24.     As a result of the decedent's status as a seaman and the Defendant's relationship as

his actual and/or borrowed employer, the Defendant CMI-L owed the decedent the duty to provide

him with prompt, adequate and proper cure for any illness, sickness, disease, condition and/or

6

injury which was contracted, aggravated and or manifested itself while he was in the service to his vessel.

25.    The Defendant negligently failed to provide the decedent SARMIENTO with prompt, adequate and proper medical cure in regard to his physical and medical conditions, including in the following ways:

a.   Failing to properly and promptly diagnose and treat the decedent's medical conditions once the ship's medical staff first became aware of his symptoms; and/or

b.   Failing to provide prompt and proper diagnostic and laboratory testing and examinations once the ship's medical staff first became aware of his symptoms; and/or

c.   Failing to consult with the appropriate medical specialists, including but not limited to Vikand Solutions, who had been hired by the Defendant CMI Inc. to perform medical consulting services for the vessel, once the ship's medical staff first became aware of his symptoms; and/or

d.   Refusing and/or failing to follow the recommendations and medical advice of shoreside consultants regarding the decedent's necessary care and treatment; and/or

e.   Failing to provide shoreside consultants with the proper and/or sufficient descriptions of the decedent's symptoms, examination results and other medical information necessary to allow them to make an appropriate diagnosis and treatment plan; and/or

f.   Refusing, delaying and/or failing to promptly medically sign the decedent off of the vessel  to receive the appropriate shoreside medical diagnosis, care and/or treatment; and/or

g.    Failing to properly diagnose the decedent's injuries and medical conditions by overlooking, failing to recognize, ignoring and/or otherwise failing to appreciate his

7

symptoms; and/or

h.   Continuing to refuse and/or failing to provide the decedent with the proper and necessary medical diagnosis, care and treatment while he was on the vessel as his condition continued to deteriorate; and/or

i.    Failing to divert the vessel or to air evacuate the decedent for shoreside medical assistance when the Defendant and/or its medical staff knew or should have known that the shipboard facilities and medical staff were insufficient to treat the decedent's worsening medical condition; and/or

j.   Failing to properly train the shipboard medical staff in the proper use of the medical equipment on board the vessel, which was necessary to properly diagnose and treat the decedent's condition so that said equipment was either not utilized and/or utilized improperly; and/or

k.    Failing to carry the proper and necessary medications aboard the vessel which were necessary to treat the decedent's medical condition which was foreseeable condition for crew and passengers aboard said vessel; and/or

l.   Failing to have sufficient up-to-date medical texts and/or access to sufficient online medical resources necessary to diagnose and treat foreseeable medical conditions, such as the one from which the decedent was suffering; and/or

m.  In other manners expected to be revealed in discovery.

26.    The Defendant is vicariously liable and/or otherwise responsible for the acts and omissions of its other employees, agents and borrowed servants working aboard the subject vessel and/or on land.

27.    Under the Jones Act, the Defendant is also vicariously liable for the negligence of all

8

of shipboard and shoreside doctors, nurses, hospitals and health care providers it selected to treat the decedent or to provide medical advice regarding such diagnosis and treatment, including but not limited to Vikand Solutions and the Defendant CMI Inc..

28.     The Defendant was on notice of the decedent's medical condition which was periodically reported to it by the vessel and knew or should have known of the seriousness and life-threatening nature of the decedent's medical condition and that the failure to provide him with prompt, adequate and proper medical care would foreseeably result in serious injury or death.

29.     As a result of the Defendant's negligent failure to provide the Plaintiff with prompt, adequate and proper medical care as described above, the decedent's original illness, sickness and medical conditions were allowed to progress and became significantly aggravated and enhanced and as a legal result the decedent SARMIENTO died after a lengthy and painful period of many days.

30.     Under both the Jones Act and the general maritime law, a survival action exists for the decedent's pre-death pain and suffering and other intangible damages.  In this case, the decedent suffered extensively before he died, including bodily injury, physical pain and suffering, emotional distress and mental anguish. Accordingly, the Plaintiff is entitled to recover damages on behalf of the decedent's estate for his pre-death pain and suffering, emotional distress, mental anguish and other intangible damages.

31.     In addition, the decedent's survivors Angel Miguel Sarmiento Tenorio and Marion Caleb Sarmiento Quintanilla have suffered and will continue to suffer in the future loss of support; loss of services of the deceased; loss of nurture, guidance, care and loss of inheritance.

32.     In addition, the ESTATE OF MIGUEL SARMIENTO has suffered and will suffer in the future loss of perspective net accumulations.

WHEREFORE, the Plaintiff demands judgment against the Defendant CMI-L for

compensatory damages in excess of Seventy-five Thousand dollars ($75,000), exclusive of interest and costs and demands trial by jury of all issues triable of right by jury.

COUNT II

**CLAIM AGAINST CMI-L UNDER GENERAL MARITIME LAW AND DOHSA FOR**
**FAILURE TO PROVIDE PROMPT, ADEQUATE AND PROPER MEDICAL CARE**

33.     The Plaintiff repeats and adopts paragraphs one (1) through seventeen (17) above and further avers:

34.     At all times material hereto, the decedent was employed by the Defendant CMI-L, while serving aboard the *MV World Odyssey* as a seaman and accordingly, the Defendant CMI-L was his employer.

35.     In the alternative, as set forth in detail in paragraph ten (10) above, the Defendant CMI-L was the decedent's employer by virtue of his status as a borrowed servant in that said Defendant controlled all aspects of the decedent's work.

36.     As a result of the decedent's status as a seaman and the Defendant's relationship as his employer, the Defendant CMI-L. owed the decedent the duty under general maritime law to provide him with prompt, adequate and proper medical care for any illness, sickness, disease and/or medical condition which he contracted, was aggravated or which manifested while in the service to his vessel. *See e.g. Atlantic Sounding Co. v. Townsend*, 557 U.S. 404 (2009).

37.     The Defendant failed to provide the decedent SARMIENTO with prompt, adequate and proper medical care in regard to his physical and medical conditions, including in the following ways:

  a.  Failing to properly and promptly diagnose and treat the decedent's medical conditions once the ship's medical staff first became aware of his symptoms; and/or

  b.  Failing to provide prompt and proper diagnostic and laboratory testing and examinations

10

once the ship's medical staff first became aware of his symptoms; and/or

c.  Failing to consult with the appropriate medical specialists, including but not limited to Vikand Solutions, who had been hired by the Defendant CMI Inc. to perform medical consulting services for the vessel, once the ship's medical staff first became aware of his symptoms; and/or

d.  Refusing and/or failing to follow the recommendations and medical advice of shoreside consultants regarding the decedent's necessary care and treatment; and/or

e.  Failing to provide shoreside consultants with the proper and/or sufficient descriptions of the decedent's symptoms, examination results and other medical information necessary to allow them to make an appropriate diagnosis and treatment plan; and/or

f.  Refusing, delaying and/or failing to promptly medically sign the decedent off of the vessel to receive the appropriate shoreside medical diagnosis, care and/or treatment; and/or

g.  Failing to properly diagnose the decedent's injuries and medical conditions by overlooking, failing to recognize, ignoring and/or otherwise failing to appreciate his symptoms; and/or

h.  Continuing to refuse and/or failing to provide the decedent with the proper and necessary medical diagnosis, care and treatment while he was on the vessel as his condition continued to deteriorate; and/or

i.  Failing to divert the vessel or to air evacuate the decedent for shoreside medical assistance when the Defendant and/or its medical staff knew or should have known that the shipboard facilities and medical staff were insufficient to treat the decedent's worsening medical condition; and/or

j.  Failing to properly train the shipboard medical staff in the proper use of the medical

11

equipment on board the vessel, which was necessary to properly diagnose and treat the decedent's condition so that said equipment was either not utilized and/or utilized improperly; and/or

k.  Failing to carry the proper and necessary medications aboard the vessel which were necessary to treat the decedent's medical condition which was foreseeable condition for crew and passengers aboard said vessel; and/or

l.  Failing to have sufficient up-to-date medical texts and/or access to sufficient online medical resources necessary to diagnose and treat foreseeable medical conditions, such as the one from which the decedent was suffering; and/or

m.  In other manners expected to be revealed in discovery.

38.    The Defendant is vicariously liable and/or otherwise responsible for the acts and omissions of its other employees, agents and/or borrowed servants working aboard the subject vessel and/or on land.

39.    Under general maritime law the Defendant is also vicariously liable for the negligence of all of shipboard and shoreside doctors, nurses, hospitals and health care providers it selected to treat the decedent or to provide medical advice regarding such diagnosis and treatment, including but not limited to the Vikand Solutions and the Defendant CMI Inc.

40.    The Defendant was on notice of the decedent's medical condition which was periodically reported to it by the vessel and knew or should have known of the seriousness and life-threatening nature of the decedent's medical condition and that the failure to provide him with prompt, adequate and proper medical care would foreseeably result in serious injury or death.

41.    As a result of the Defendant's failure to provide the decedent with prompt, adequate and proper medical care as described above, the decedent's original illness, sickness and medical conditions were allowed to progress and became significantly aggravated and enhanced and as a

12

legal result the decedent SARMIENTO died after a lengthy and painful period of many days.

42.     As a result of the decedent's death, his survivors, Angel Miguel Sarmiento Tenorio and Marion Caleb Sarmiento Quintanilla, have suffered and will continue to suffer in the future loss of support; loss of services of the deceased; loss of nurture, guidance, care and loss of inheritance.

43.     In addition, the ESTATE OF MIGUEL SARMIENTO has suffered and will suffer in the future loss of perspective net accumulations.

WHEREFORE, the Plaintiff demands judgment against the Defendant CMI-L for all damages allowed under DOHSA and demands trial by jury of all issues triable of right by jury.

## COUNT III

### VICARIOUS LIABILITY CLAIM AGAINST CMI INC UNDER THE GENERAL MARITIME LAW FOR NEGLIGENCE IN THE TREATMENT OF DECEDENT

44.     The Plaintiff repeats and adopts paragraphs one (1) through seventeen (17) above and further avers:

45.     At all times material, the Defendant CMI Inc. selected, trained, supervised and employed the ship's physician, nurses and other medical personnel aboard the *M/V World Odyssey* and accordingly, is vicariously liable for the negligence of the ship's doctor, nurses and other medical personnel in the care, treatment and diagnosis of the decedent while serving as a seaman aboard said vessel.

46.     Alternatively, the Defendant CMI Inc. controlled the actions of the ship's physician, nurses and other medical personnel aboard the *M/V World Odyssey* in the performance of their duties and as such is vicariously liable for their actions in the care and treatment of the decedent by virtue of their status as borrowed servants of the Defendant.

47.     The ship's doctor, nurses and other medical personnel were negligent in their

13

medical care, treatment and diagnosis of the decedent SARMIENTO in regard to his physical and medical conditions, including in the following ways:

a.  Failing to properly and promptly diagnose and treat the decedent's medical conditions once the ship's medical staff first became aware of his symptoms; and/or

b.  Failing to provide prompt and proper diagnostic and laboratory testing and examinations once the ship's medical staff first became aware of his symptoms; and/or

c.  Failing to consult with the appropriate medical specialists, including but not limited to Vikand Solutions, who had been hired by the Defendant CMI Inc. to perform medical consulting services for the vessel, once the ship's medical staff first became aware of his symptoms; and/or

d.  Refusing and/or failing to follow the recommendations and medical advice of shoreside consultants regarding the decedent's necessary care and treatment; and/or

e.  Failing to provide shoreside consultants with the proper and/or sufficient descriptions of the decedent's symptoms, examination results and other medical information necessary to allow them to make an appropriate diagnosis and treatment plan; and/or

f.  Refusing, delaying and/or failing to promptly medically sign the decedent off of the vessel to receive the appropriate shoreside medical diagnosis, care and/or treatment; and/or

g.  Failing to properly diagnose the decedent's injuries and medical conditions by overlooking, failing to recognize, ignoring and/or otherwise failing to appreciate his symptoms; and/or

h.  Continuing to refuse and/or failing to provide the decedent with the proper and necessary medical diagnosis, care and treatment while he was on the vessel as his condition continued to deteriorate; and/or

14

    i.  Failing to call for the vessel to be diverted or for the air evacuation of the decedent for shoreside medical assistance when the medical staff knew or should have known that the shipboard facilities and medical staff were insufficient and inadequate to treat the decedent's worsening medical condition; and/or

    j.  Failing to properly use the medical equipment on board the vessel, which was necessary to properly diagnose and treat the decedent's condition; and/or

    k.  In other manners expected to be revealed in discovery.

48.    The Defendant is also vicariously liable and/or otherwise responsible for the acts and omissions of its other employees, agents and/or borrowed servants working aboard the subject vessel and/or on land.

49.    The Defendant is also vicariously liable for the acts and omissions of Vikand Solution, which at all times materials was acting as its agent.

50.    The Defendant was on notice of the decedent's medical condition which was periodically reported to it by the vessel and knew or should have known of the seriousness and life-threatening nature of the decedent's medical condition and that the failure to provide him with prompt, adequate and proper medical care would foreseeably result in serious injury or death.

51.    As a result of the Defendant's negligence, by and through its employees, agents and borrowed servants, in failing to provide the decedent with prompt, adequate and proper medical care as described above, the decedent's original illness, sickness and medical conditions were allowed to progress and became significantly aggravated and enhanced and as a legal result the decedent SARMIENTO died after a lengthy and painful period of many days.

52.    As a result of the decedent's death, his survivors, Angel Miguel Sarmiento Tenorio and Marion Caleb Sarmiento Quintanilla, have suffered and will continue to suffer in the future loss of support; loss of services of the deceased; loss of nurture, guidance, care and loss of

15

inheritance.

53.     In addition, the ESTATE OF MIGUEL SARMIENTO has suffered and will suffer in the future loss of perspective net accumulations.

WHEREFORE, the Plaintiff demands judgment against the Defendant CMI Inc. for all damages allowed under DOHSA and demands trial by jury of all issues triable of right by jury.

## COUNT IV

### CMI INC'S OWN DIRECT NEGLIGENCE

54.     The Plaintiff repeats and adopts paragraphs one (1) through seventeen (17) above and further avers:

55.     The Defendant CMI Inc. entered into a contract and/or agreement with ISE and/or otherwise undertook the obligation to select and procure the medicines necessary for the safe medical treatment of the crew; to maintain the ship's formulary of medicines necessary for the proper medical treatment of the crew and to properly select, train and supervise the ship's doctor, nurses and medical care in order for the performance of their duties in providing prompt, adequate and appropriate medical care for the crew, including the decedent.

56.     The decedent Sarmiento, as a member of the crew, was a third-party beneficiary to said contract or agreement and/or relied upon CMI Inc's undertakings as set forth above.

57.     The Defendant CMI Inc. was negligent in caring out its above-described duties and obligations, which caused and/or contributed to the negligent medical care provided to the decedent, including in the following manners:

a.     Failing to properly train the shipboard medical staff in the proper use of the medical equipment on board the vessel, which was necessary to properly diagnose and treat the decedent's condition so that said equipment was either not utilized and/or utilized improperly; and/or

16

b.   Failing to properly train the shipboard medical staff in the proper diagnosis and treatment for the types of medical conditions and diseases, which were reasonably foreseeable for seamen sailing on the itineraries planned for the *M/V World Odyssey* to contract; and/or

c.   Failing to carry the proper and necessary medications aboard the vessel which were necessary to treat the decedent's medical condition which was a foreseeable condition for crew and passengers aboard said vessel; and/or

d.   Failing to have sufficient up-to-date medical texts and/or access to sufficient online medical resources necessary to diagnose and treat foreseeable medical conditions, such as the one from which the decedent was suffering; and/or

e.   Failing to properly supervise and/or monitor the shipboard medical staff's diagnosis, care and treatment of the decedent; and/or

f.   In other manners expected to be revealed in discovery.

58.   The Defendant is also vicariously liable and/or otherwise responsible for the acts and omissions of its employees, agents and borrowed servants working aboard the subject vessel and/or on land.

59.   The Defendant was on notice of the decedent's medical condition which was periodically reported to it by the vessel and knew or should have known of the seriousness and life-threatening nature of the decedent's medical condition and that the failure to provide him with prompt, adequate and proper medical care would foreseeably result in serious injury or death.

60.   As a result of the Defendant's negligence, by and through its employees, agents and borrowed servants as described above, the decedent's original illness, sickness and medical conditions were allowed to progress and became significantly aggravated and enhanced and as a legal result the decedent SARMIENTO died after a lengthy and painful period of many days.

17

61.     As a result of the decedent's death, his survivors, Angel Miguel Sarmiento Tenorio and Marion Caleb Sarmiento Quintanilla, have suffered and will continue to suffer in the future loss of support; loss of services of the deceased; loss of nurture, guidance, care and loss of inheritance.

62.     In addition, the ESTATE OF MIGUEL SARMIENTO has suffered and will suffer in the future loss of perspective net accumulations.

WHEREFORE, the Plaintiff demands judgment against the Defendant CMI Inc. for all damages allowed under DOHSA and demands trial by jury of all issues triable of right by jury.

Dated this _26th_ day of May, 2021.

By: /S/ *Robert D. Peltz*
Robert D. Peltz, Esq. (FBN 220418)
The Peltz Law Firm, P.A.
P.O. Box 56-0003
Miami, Fla. 33256
RPeltzLaw@Gmail.com
            and

/s/Louis A. Vucci, Esq.
Louis Vucci, Esq.,
Fla. Bar No.:131581
Louis@thevuccilawgroup.com
Louis A. Vucci, PA
Attorney for the Plaintiff
1 S.E. 3rd Avenue, Suite 3020
Miami, Florida 33131
Tel. (305) 573-0125
Facsimile (786) 536-7799